# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON RILEY, | Case No. 1:19-cv-01643-BAM (PC) |
| Plaintiff, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AMENDED COMPLAINT |
| v. | |
| GUERRERO, et al., | (ECF No. 15) |
| Defendants. | **THIRTY-DAY DEADLINE** |

Plaintiff Shannon Riley ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action under 42 U.S.C. § 1983. Plaintiff's complaint, filed on November 20, 2019, is currently before the Court for screening. (ECF No. 1.)

**I.  Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

**II.    Plaintiff's Allegations**

Plaintiff is currently housed at North Kern State Prison in Delano, California, where the events in the complaint are alleged to have occurred. Plaintiff names the following defendants in their individual and official capacities: (1) Correctional Officer A. Guerrero; (2) Correctional Officer M. Garcia; (3) Correctional Officer J. Mendez; (4) Captain P. Chanelo; (5) Warden K. Santoro; and (6) Correctional Officer E. Garcia.

Plaintiff alleges: On or around March 2, 2019, Plaintiff was released from orientation to general population and subsequently moved from Facility A building 4 to Facility A building 3. Upon entering his newly assigned cell, Plaintiff noticed that there was no toilet paper, the cell was extremely dusty as a result of the air vent blowing dust and the hot water appeared not to work. Plaintiff approached the unit staff office where Officer Guerrero was seated with another officer. Plaintiff lightly knocked on the office door and was motioned to enter the office. Plaintiff informed the other officer that his cell's hot water did not work, the vent was blowing dust and there was no toilet paper. Officer Guerrero was scowling, and Plaintiff asked, "what's up man, you okay?" (ECF No. 1 at 10.) Officer Guerrero replied, "No! What the [expletive] you want?

You don't know to not disturb someone when the door is closed?!" (Id.) Plaintiff replied that he had knocked and continued to inform Officer Guerrero that he just moved from building 4 and had no toilet paper, the hot water did not work, and the vent was dirty. Officer Guerrero replied, "I don't give a [expletive]! Tissue is pasted [sic] out during third watch." (Id.) Plaintiff requested Officer Guerrero's name and exited the office. Plaintiff claims that he subsequently had to purchase a roll of tissue from another inmate. The inmate also informed Plaintiff to place his cell and whatever was broken in his cell on a maintenance list hanging on the wall. Plaintiff later filed a complaint against Officer Guerrero regarding the incident.

On or around March 9, 2019, approximately six days later, Plaintiff received a visit from his wife, Maria Carlos. Plaintiff was seated in the first row of the visiting room, directly in front of the officer podium. Plaintiff noticed there were a number of vacant seats throughout the visiting room.

On or around March 16, 2019, Plaintiff again received a visit from his wife, Maria Carlos. Plaintiff noticed he was again seated directly in front of the officer podium. Plaintiff also noticed there were a number of vacant seats throughout the visiting room. Later that day, Plaintiff noticed a female officer, later identified as Officer M. Garcia, enter the visiting room and position herself at the officer podium. Plaintiff's wife initially noticed Officer Garcia staring at Plaintiff. After being so informed, Plaintiff also noticed Officer Garcia staring at him. Officer Garcia allegedly did not try to hide her contempt for Plaintiff by rolling her eyes at him each time he looked at her. Plaintiff's visit with his was subsequently terminated under the guise of overcrowding.

On or around March 17, 2019, Plaintiff again received a visit from his wife, Maria Carlos. Plaintiff again was seated in the front row of the visiting room even though there were a number of empty seats throughout the room. Plaintiff noticed the visiting sergeant enter the visiting area. Plaintiff elected to approach the sergeant, later identified as Sergeant Short. Plaintiff informed Sgt. Short that he was being placed deliberately in front of the officer podium each time he received a visit from his wife and the early terminations. Sgt. Short explained that it was merely a coincidence. Plaintiff's visit was terminated again under the guise of overcrowding. Plaintiff

filed an appeal regarding the incident.

On or around March 20, 2019, Officer Guerrero stopped at Plaintiff's cell while he passed out the mail and threatened Plaintiff. Officer Guerrero confronted Plaintiff for filing a complaint against him. Officer Guerrero used a number of profanities and stated, "I'll return the favor." (ECF No. 1 at 12.)

On or around March 31, 2019, eleven days later, Plaintiff was called to Facility A medical. Plaintiff approached the medical door where Officer Mendez was standing and stated, "I'm not dressed so I'm coming to refuse." (Id.) Plaintiff leaned through the door to get the nurse's attention, identified himself to the nurse, and told the nurse that he was fine. At the same time, Plaintiff felt Officer Mendez's body weight press against Plaintiff's backside and buttocks and felt warm breath on the back of his neck. Officer Mendez, on learning Plaintiff's name, indicated that he needed to send Plaintiff some mail (meaning file a Rules Violation Report against him). Plaintiff became irate, reacting to Officer Mendez allegedly sexually assaulting Plaintiff and threatening to retaliate against him. Plaintiff immediately removed himself from the situation and filed a complaint against Officer Mendez for alleged sexual battery and retaliation.

On or around March 31, 2019, Plaintiff authored a letter to Warden Santoro regarding prison staff and the deliberate indifference that staff displayed to inmates.

On or around May 20, 2019, Plaintiff alleges that Officer Mendez continued his acts of retaliation and threatened Plaintiff. On May 20, 2019, Plaintiff again was called to Facility A Medical to pick up his medication. Upon entering, Plaintiff asked the nurse why he was being called to medical when he had repeatedly informed all medical staff of his reluctance to come to medical during third watch. Officer Mendez reportedly stated that he had called Plaintiff to pick up his medication. Officer Mendez also told Plaintiff that he knew about the complaint and that he would "get" Plaintiff. (ECF No. 1 at 13.) Plaintiff exited the medical unit and returned to his housing unit to file another complaint against Officer Mendez.

On or around August 19, 2019, Plaintiff was headed out to yard because it was yard release. Facility A second watch yard staff were standing in front of building 3 frisking inmates as they exited the building. For each inmate that exited the building, yard staff requested to see

the inmate's I.D. card. As Plaintiff exited the building, Officer E. Garcia told other officers that Plaintiff was a whiner. At this point, Officer Baeza requested to see Plaintiff's I.D. card. Plaintiff complied and continued walking. Officer Garcia then summoned Plaintiff and asked to see Plaintiff's I.D. card. Plaintiff stated that he had just shown Officer Baeza. Officer Baeza reportedly lied and said that Plaintiff had not shown Officer Baeza the card. Plaintiff then handed his I.D. card to Officer E. Garcia, who instructed Plaintiff to take it back inside. When Plaintiff asked why, Officer Garcia replied, "I don't like your attitude." (Id. at 15.) Plaintiff complied and returned inside the building. However, Plaintiff snuck back outside an hour later. Plaintiff approached the yard sergeant and presented him with a CDCR 22 form request for interview. The form inquired whether or not yard staff had the authority to deny/restrict inmates' yard without just cause. Sergeant Clagg said no and signed the form. Plaintiff then filed a complaint against Officer Garcia for violation of Plaintiff's due process rights.

On or around September 28, 2019, Plaintiff submitted a 22 form to both Captain Chanelo and Warden Santoro regarding Plaintiff's lack of access to hot water in his cell and the dirty vent. Warden Santoro did not respond. However, Captain Chanelo replied and indicated that a work order had been placed to address the situation. Plaintiff claims that he has developed a persistent cough from the vent blowing dust.

Plaintiff forwards the followings claims: (1) that Officer Guerrero violated Plaintiff's Eighth, First, and Fourteenth Amendment rights; (2) that Officer M. Garcia violated Plaintiff's First and Fourteenth Amendment rights; (3) that Officer Mendez violated Plaintiff's First, Fourteenth and Eighth Amendment rights; (4) that Officer Chanelo violated Plaintiff's First and Fourteenth Amendment rights; (5) that Warden Santoro violated Plaintiff's Eighth, First and Fourteenth Amendment rights; and (6) that Officer E. Garcia violated Plaintiff's First and Fourteenth Amendment rights.

Plaintiff seeks declaratory relief, along with compensatory and punitive damages.

**III.     Discussion**

Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 18 and 20 and fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, he will be given an

opportunity to the cure the identified deficiencies to the extent he is able to do so in good faith. To assist Plaintiff, the Court provides the pleading and legal standards that appear applicable to his claims.

**A.  Federal Rules of Civil Procedure 18 and 20**

Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997). The "same transaction" requirement refers to similarity in the factual background of a claim. Id. at 1349. Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Here, Plaintiff is attempting to bring claims against unrelated parties concerning unrelated events.  Although there may be common questions of law regarding his claims, they do not arise out the same transaction, occurrence, or series of transactions and occurrences.  For example, Plaintiff's claims against Defendant Guerrero arise out of events on March 2 and March 20, 2019, whereas Plaintiff's claims against Defendant Mendez arise out of separate, unrelated events on March 31 and May 20, 2019.  If Plaintiff elects to amend his complaint, then he must ensure that defendants may properly be joined in the same action; that is, Plaintiff must ensure that claims against multiple defendants arise out of the same transaction or occurrence, or series of transactions and occurrences and there are common questions of law or fact.

**B.  Supervisory Liability**

To the extent Plaintiff seeks to hold Warden Santoro and Captain Chanelo liable based solely on their supervisory roles, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.2009); Jones v. Williams,

6

297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. Cty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Plaintiff's allegations concerning Warden Santoro and Captain Chanelo are not sufficient to state a cognizable claim. At best, Plaintiff is attempting to impose liability against these defendants based simply on their supervisory roles. There are no allegations to suggest that that these defendants participated in any violations of Plaintiff's rights or that they implemented any deficient policies that were the moving force of any constitutional violation.

## C. First Amendment - Retaliation

Plaintiff asserts that all of the defendants retaliated against him in violation of his First Amendment rights.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Silva, 658 at 1104; Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." Watison, 668 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. Id. The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. Rhodes, 408 F.3d at 567–68. Plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." Watison, 668 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." Id.

Here, Plaintiff fails to state a cognizable claim for retaliation against any of the named defendants. There is no indication from the allegations in the complaint that any individual took an adverse action against Plaintiff because of any protected activity or that the actions of any defendant had a chilling effect on Plaintiff's future First Amendment activities or that he suffered any harm that was more than minimal.

### D. Eighth Amendment – Conditions of Confinement

Plaintiff asserts claims arising under the Eighth Amendment concerning his conditions of confinement against Defendants Guerrero, Chanelo, and Santoro.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992). In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 847 (1994); Frost v. Agnos, 152 F.2d 1124, 1128 (9th Cir. 1998).

Here, Plaintiff has not alleged facts establishing that he was deprived of adequate hot water, toilet paper and a working vent beyond a brief period of time. Plaintiff admits that he obtained toilet paper shortly after complaining of its absence and that a work order had been submitted for the hot water and vent. Plaintiff has failed to allege facts demonstrating that he was subjected to conditions sufficiently grave to fall within the purview of the Eighth Amendment. May v. Baldwin, 109 F.3d 557, 565-66 (9th Cir. 1997). Further, Plaintiff has not alleged any facts showing that any named Defendant knowingly disregarded a substantial risk of harm to Plaintiff. There is no indication that Defendant Guerrero knew of a long-lasting condition in Plaintiff's cell or that Plaintiff was being deprived of the minimal civilized measure of life's necessities. As discussed above, Plaintiff obtained toilet paper and a work order had been submitted for his vent and water. As to Defendant Chanelo, Plaintiff admits that Defendant Chanelo responded to Plaintiff's complaint by indicating that a work order had been submitted to address the problems with his hot water and vent. As to Warden Santoro, there is no indication that Warden Santoro that he knew of any problems with the conditions in Plaintiff's cell. For these reasons, the Court finds that Plaintiff has not pled a cognizable Eighth Amendment claim against Defendants Guerrero, Santoro or Chanelo.

### E. Eighth Amendment – Sexual Assault

Plaintiff alleges that Defendant Mendez sexually assaulted Plaintiff in violation of the Eighth Amendment. "Sexual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment." Wood v. Beauclair, 692 F.3d 1041, 1046 (9th Cir. 2012) (citing Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000)). "In the simplest and most absolute of terms … prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse …." Schwenk, 204 F.3d at 1197. "In evaluating a prisoner's claim, courts consider whether 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Wood, 692 F.3d at 1046.

Here, Plaintiff alleges that he felt Officer Mendez's body weight press against his backside and buttocks and felt warm breath on the back of his neck. This is not sufficient to state

a claim under the Eighth Amendment. Plaintiff has not alleged more than a brief touching. See Berryhill v. Schriro, 137 F.3d 1073 (8th Cir. 1998) (stating a prisoner plaintiff failed to establish a sexual assault claim where two brief touches to an inmate's buttocks, unaccompanied by any sexual comments or banter, lasted only seconds and the inmate thought that the defendants were trying to embarrass him, not rape him); Johnson v. Frauenheim, No. 1:18-cv-01477-AWI-BAM (PC), 2019 WL 5260447, at *15 (E.D. Cal. Oct. 17, 2019) (finding brief touching of genitalia, if any, was not sufficient to state a cognizable Eighth Amendment claim). Further, Plaintiff's complaint lacks any allegations to suggest that Officer Mendez action with a sufficiently culpable state of mind.

### F. Fourteenth Amendment – Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that defendants intentionally discriminated against a plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702–03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601–02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

The nature of Plaintiff's claim arising under the Equal Protection Clause is unclear. Plaintiff appears to be asserting that he is entitled to protection under the law, which does not form the basis of an equal protection claim. In any amended complaint, Plaintiff should clarify the nature of this claim in light of the relevant legal standard.

### IV. Conclusion and Order

For the reasons stated, Plaintiff's complaint fails to comply with Federal Rules of Civil Procedure 18 and 20 and fails to state a cognizable claim for relief. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the above-

identified deficiencies to the extent he is able to do so in good faith. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, as previously noted, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and

3. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: **February 4, 2020**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE